UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CANAL INDEMNITY COMPANY, a foreign insurer; ST. PAUL SURPLUS LINES INSURANCE COMPANY, a foreign insurer, ARCH SPECIALTY INSURANCE COMPANY, a foreign insurer,<br><br>        Plaintiffs,<br><br>    v.<br><br>GLOBAL DEVELOPMENT, LLC, a/k/a G & M INVESTMENTS, INC.; MICHAEL K. MASTRO and JANE DOE MASTRO, husband and wife; MICHAEL R. MASTRO and LINDA MASTRO, husband and wife; PAUL STEPHANUS and BARBARA STEPHANUS, husband and wife; JOHN STEPHANUS, an individual; PARK EDMONDS APARTMENTS, LLC; WEST MALL PLACE APARTMENTS, LLC; PARK 212 APARTMENTS, LLC; and PARK 210 APARTMENTS, LLC,<br><br>        Defendants/Third Party Plaintiffs<br><br>AND RELATED CROSS ACTIONS | No. 2-14-CV-00823-RSM<br><br>**ORDER GRANTING MOTION FOR CONTRIBUTION BAR AND GRANTING MOTION TO COMPEL IN PART** |

THIS MATTER comes before the Court upon Motion for a Contribution Bar by Defendants Paul and Barbara Stephanus, West Mall Place Apartments LLC, Park Edmonds Apartments LLC, Park 210 Apartments LLC, and Park 212 Apartments LLC (collectively, the

ORDER GRANTING MOTION FOR CONTRIBUTION BAR
AND GRANTING MOTION TO COMPEL IN PART- 1

"Stephanuses"). Dkt. # 56. Also pending are Motions for Joinder in the Motion for a Contribution Bar by Third-party Defendants United National Insurance Company ("United National") (Dkt. # 69), Interstate Fire & Casualty Company and National Surety Corporation (collectively, "Fireman's Fund") (Dkt. # 80), and Chubb Custom Insurance Company ("Chubb") (Dkt. # 82), as well as Intervenor Plaintiff St. Paul Surplus Lines Insurance Company ("St. Paul") (Dkt. # 86). Plaintiff Canal Indemnity Corporation ("Canal") as well as Intervenors/Third-Party Defendants General Star Management Company, General Star National Insurance Company and General Star Indemnity Company (collectively, "General Star") have filed notices of joinder in the Stephanuses' Motion. Dkt. # # 72, 77. The instant Order further considers the pending Motion to Compel by Defendants the Stephanuses. Dkt. # 121. The Court deems oral argument unnecessary. Having considered the parties' moving papers and supporting exhibits as well as the remainder of the record, and for the reasons stated herein, the Court grants the Stephanuses' Motion for a Contribution Bar and the various Joinders therein and grants in part and denies in part the Stephanuses' Motion to Compel.

## BACKGROUND

This is an insurance coverage action brought by Canal and consolidated with a related coverage action by Plaintiff Arch Specialty Insurance Company ("Arch"). Canal and Arch both seek declaratory judgment regarding their coverage obligations for the claims asserted against their named insured, Global, related to alleged construction defects in various properties developed by Global together with the Michael R. Mastro and Michael K. Mastro (the "Mastros") for the Stephanuses. *See* Dkt. # 1 ("Canal Compl."); Case No. 14-1181RSM, Dkt. # 1 ("Arch Compl."). The Stephanuses, having settled with Canal and four excess

ORDER GRANTING MOTION FOR CONTRIBUTION BAR
AND GRANTING MOTION TO COMPEL IN PART- 2

insurance carriers, now seek this Court's entry of a contribution bar in order to prevent non-settling insurer, Arch, from pursuing contribution claims against the settling carriers.

The factual details underlying these consolidated suits are complex and well-known to the parties. In brief, the Stephanuses filed four lawsuits in Snohomish County related to apartment complexes developed and constructed by Global and the Mastros and sold to the Stephanuses: West Mall Place, Park Edmonds, Park 210, and Park 212 Apartments (the "Projects"). The Stephanuses allegedly discovered construction defects at several of the Projects, whereupon they entered into a Memorandum of Understanding (the "MOU") in 2008 with the Mastros, through which the Mastros promised to remedy any known construction defects on any properties constructed for the Stephanuses. *See* Canal Compl., ¶ 51 & Ex. C; Dkt. # 42, ¶ 51. After the Mastros failed to perform (*see* Dkt. # 42, ¶ 52), the Stephanuses brought four lawsuits seeking to recover on the original constructions contracts as well as the MOU. *See Park Edmonds Apartments LLC, et al. v. Global Development LLC, et al.*, Snohomish County Case No. 10-2-070140-0; *West Place Apartments, LLC, et al. v. Global Development LLC, et al.*, Snohomish County Superior Court, Case No. 10-2-07013-2; *Park 210 Apartments LLC, et al.*, Snohomish Cause Superior Court, Case No. 12-2-09963-2; *Park 212 Apartments LLC, et al. v. Global Development LLC*, Snohomish County Superior Court, Case No. 12-2-09964-1 (collectively, the "underlying lawsuits").

The insureds tendered their defense in the underlying lawsuits to primary insurers Canal and Arch under a full reservation of rights and defenses, and the insurance companies provided defense through the law firm Scheer & Zehnder LLP. *See* Canal Compl. ¶ 17; Dkt. # 57.[1] The Stephanuses contend that the costs to repair the four properties at issue in the

---

[1] Canal provided defense for all named defendants, while Arch agreed to defend Global and Michael K. Mastro. *See* Dkt. # 88, p. 12; Dkt. # 77, p. 5. Arch asserts that non-party Safeco Insurance Company also provided defense. Dkt. # 88, p. 12.

ORDER GRANTING MOTION FOR CONTRIBUTION BAR
AND GRANTING MOTION TO COMPEL IN PART- 3

underlying lawsuits is $15,547,131 (Dkt. # 42-2), while defense counsel for the insureds recommended a maximum settlement value of $2,000,000 for all four suits (Dkt. # 47, Ex.'s 18-21). The trial judge ultimately ruled in all four underlying lawsuits that Michael K. was a signator to the MOU and granted summary judgment for plaintiffs in the *Park 210* case. *See* Dkt. # 29, Ex.'s 5-6.

On June 30, 2014, the Mastros and Global entered into a CR 2A Agreement with the Stephanuses. Dkt. # 42-1. The Stephanuses therein agreed to settle any and all claims against the Mastros and Global arising out of the projects along with any claims arising out of the MOU in exchange for a covenant judgment against all defendants in the underlying lawsuits for $8,000,000. *Id.* at ¶¶ 2-4. The Mastros further agreed to assign any and all claims against their insurers to the Stephanuses. *Id.* On August 21, 2014, Global and the Mastros entered into a settlement agreement with Fireman's Fund, General Star, Chubb, and United National (the "Excess Insurers"), in which they consented to entry of judgment in favor of the Stephanuses for $8,239,540. Dkt. # 42-2, ¶ 1. The four Excess Insurers further agreed to pay the Stephanuses the collective sum of $2,000,000 on behalf of the Mastros, and the Stephanuses agreed to move the underlying state court for a reasonableness hearing as to the settlement amount[2] and to seek a contribution bar in this Court in order to prevent non-settling insurers from seeking contribution from the Excess Insurers. *Id.* at ¶¶ 5, 11. Shortly thereafter, the Stephanuses entered into a settlement with Canal, in which Canal agreed to pay $800,000 to resolve the claims against the insureds, contingent on the Stephanuses obtaining a similar contribution bar. Dkt. # 63-3. Canal also therein agreed to assign all contribution claims and rights against non-settling insurers to the Stephanuses. *Id.* at ¶ 7.

---

[2] Arch asserts that the underlying state trial court granted the reasonableness motion without any findings of fact on October 3, 2014. Dkt. # 88, p. 14.

ORDER GRANTING MOTION FOR CONTRIBUTION BAR
AND GRANTING MOTION TO COMPEL IN PART- 4

Canal filed the instant lawsuit on June 5, 2014 (*see* Canal Compl.), and Arch filed its Complaint on August 4, 2014 (*see* Arch Compl.). Both Complaints seek declaratory judgment that Canal and Arch, respectively, have no duty to defend or indemnify, or to provide any benefits or coverage under their policies for claims asserted in the underlying actions. Soon after these cases were consolidated (*see* Dkt. # 51), Defendants the Projects and the Stephanuses brought the instant Motion for a Contribution Bar, in which Canal, the Excess Insurers, and intervening Plaintiff St. Paul all join. Arch alone opposes the entry of a contribution bar.

## DISCUSSION

**I.    Contribution Bar**

**A.  Legal Standard**

This Court has inheritable equitable authority to enter an order precluding subsequent claims for contribution and indemnity by non-settling parties, so long as the non-settling parties receive notice and have their rights protected. *Cadet Mfg. Co. v. American Ins. CO.*, 2006 WL 910000, *1 (W.D. Wash. 2006); *Zidell Marine Corp. v. Beneficial Fire and Casualty Ins. Co.*, C03-5131RBL, at Dkt. # 254 (W. D. Wash. May 24, 2004). Such bar orders can be an essential to multi-party litigation. Absent such a mechanism,

> Any single defendant who refuses to settle, for whatever reason, forces all others to trial. Anyone foolish enough to settle without barring contribution is courting disaster. They are allowing the total damages from which their ultimate share will be derived to be determined in a trial where they are not even represented.

*Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) (internal quotations omitted); *Bank of America v. Travelers Indem. Co.*, 2009 WL 529227, *1 (W.D. Wash. 2009).

Washington courts thus recognize contribution bar orders as "consistent with the public policy

ORDER GRANTING MOTION FOR CONTRIBUTION BAR
AND GRANTING MOTION TO COMPEL IN PART- 5

in Washington of encouraging settlement." *Puget Sound Energy v. Certain Underwriters at Lloyd's*, 134 WN. App. 228, 250, 138 P.3d 1068 (2006) (holding that the trial court had equitable power to issue a contribution bar order).

At the same time, the public policy favoring settlement and the Court's interest in expeditiously resolving disputes must be "'tempered by the need to assure factual fairness and the correct application of legal principles' when considering a bar order." *Bank of America*, 2009 WL 529227, *1 (quoting *Franklin*, 884 F.2d at 1225). In determining whether a contemplated contribution bar is appropriate, the court considers whether the proposed settlement is reasonable and the interests of non-settling defendants are protected. *Id.*; *Zidell*, C03-5131RBL, *3. Reasonableness in this context is "not a high hurdle." *Bank of America*, 2009 WL 529227, *1 (providing that the court "must simply ensure that the settlement is not patently collusive or inadequate"). Though the Court need not hold a "reasonableness" hearing in making its evaluation, *see Zidell*, C03-5131RBL at p. 4 (citing RCW 4.22), it may consider the evaluative factors outlined in *Glover v. Tacoma General Hospital*, 98 Wn. 2d 708, 658 P.2d 1230 (1983), rev'd on other grounds by *Crown Controls, Inc. v. Smiley*, 110 Wash.2d 695, 756 P.2d 717 (1988). *See St. Paul Fire and Marine Ins. Co. v. Hebert Const., Inc.*, 2007 WL 836700, *10 (W.D. Wash. 2007). These factors include:

> "[t]he releasing person's damages; the merits of the releasing person's liability theory; the merits of the released person's defense theory; the released person's relative faults; the risks and expenses of continued litigation; the released person's ability to pay; any evidence of bad faith, collusion, or fraud; the extent of the realizing person's investigation and preparation of the case; and the interests of the parties not being released."

*Glover*, 98 Wash.2d at 717 (internal citations omitted). No single factor need control, and the court has discretion to weigh each case individually. *Id.* at 718. Further, the settling parties' "fault" relative to the non-settling parties' need to be considered, as the trial judge would

ORDER GRANTING MOTION FOR CONTRIBUTION BAR
AND GRANTING MOTION TO COMPEL IN PART- 6

otherwise be required to conduct a mini-trial in order to apportion liability. *Id.* at 717; *Cadet*, 2006 WL 10000, *6.

There is no single formula for determining whether non-settling parties' rights are protected when a bar order is entered. The *Puget Sound Energy* court outlined several alternatives, including: (1) offsetting the total amount of damages determined at trial by the settlement amount, (2) limiting non-settling defendants' liability to the percentage of the total amount of damages for which they are determined to be culpable, and (3) allowing for the risk of inadequate settlement to reside with plaintiff. 134 Wash.App. at 249-253. Courts have also looked to whether a defendant maintains the right to litigate coverage defenses, which could allow it to avoid payment obligations altogether. *See Cadet*, 2006 WL 910000, *2.

### B. Evaluation of Proposed Bar Order

With these factors in mind, the Court determines that the bar order proposed in this case is appropriate. First, both the settlements with the Excess Insurers and with Canal are reasonable. The majority of the *Glover* factors weigh heavily in favor of such a finding. For instance, the Excess Insurers and Canal have articulated strong coverage defenses based on the various exclusions in their policies and the prejudice caused by the Mastros in entering into an MOU that precluded the insurers from arguing statute of limitations defenses to the Stephanuses' construction defect claims. *See, e.g.*, Dkt. # 80, p. 4. As to reasonableness of settlement amounts, the Excess Insurers have agreed to collectively pay the total amount of damages estimated by Arch's counsel despite the fact that their own policies will only be triggered once the primary insurance policy limits are exhausted. The amount of Canal's settlement, while greater than that of any Excess Insurer, reflects its strong coverage defenses as well as the limits on its policies. While Canal and Arch both issued primary policies insuring Global, Arch, by its own admissions also issued three excess policies with $5 million

ORDER GRANTING MOTION FOR CONTRIBUTION BAR
AND GRANTING MOTION TO COMPEL IN PART- 7

limits, giving it $15 million more exposure than Canal. *See* Dkt. # 88 at pp. 7-10. Taking this coverage differential into account, the Court does not agree with Arch that the settling insurers are receiving a so-called "sweetheart deal." Dkt. # 88, pp. 14-16. *See* Glover, 98 Wash.2d at 717 (concern with "sweetheart deals" is balanced against other factors, such as insuring that payment is calibrated to liability). Further, there is no evidence of fraud or collusion behind the settlement agreements, which by all accounts appear to have been conducted in good faith and at arm's-length.

The Court also disagrees with Arch that the proposed contribution bar would leave it unprotected. Arch argues that it should not be stripped of its right to seek equitable contribution by settlements that leave it exposed to $5,439,540, or 66%, of the covenant judgment. *See* Dkt. # 88, p. 15. This argument is unavailing. That Arch is left with greater exposure to liability as a consequence of a bar order does not in itself render the bar order inappropriate. Indeed, courts in this district have entered bar orders which left non-settling defendants exposed to 50% or more of the total amount of damages. *See, e.g., Cadet*, 2006 WL 910000 at *2 (entering covenant judgment that exposed non-settling defendant to liability for 58% of damages); *Zidell*, C03-5131RBL at p. 6 (entering bar order exposing non-settling insurer to nearly half of total damages). As settlements are a compromise of claims, it would be unreasonable, and indeed contrary to their purpose, to expect them to reflect the allocation that might have been determined at trial. *See Cadet*, 2006 WL 910000 at *2.

More fundamentally, percentage exposure is simply inapposite to the determination of whether a non-settling defendant is protected. *See Puget Sound Energy*, 134 Wash.App. at 251-52. The Court instead looks to the presence of specified mechanisms to protect the interests of non-settling insurers. *See id.* Here, Arch is sufficiently protected by its agreed entitlement to an offset for the monies paid by the settling insurers against the covenant

ORDER GRANTING MOTION FOR CONTRIBUTION BAR
AND GRANTING MOTION TO COMPEL IN PART- 8

judgment, and the Stephanuses are thereby precluded from receiving the potential windfall of double recovery.[3] *See Cadet*, 2006 WL 910000 at *2; *Zidell*, C03-5131RBL at p. 6; *cf. Bank of America*, 2009 WL 529227 at *2 (rejecting a bar order that presented no such safeguard). Further, Arch retains the right to litigate its coverage defenses. If successful, Arch may end up paying nothing toward the remaining covenant judgment. *See Cadet*, 2006 WL 910000 at *2. Though the settling insurers have chosen to forsake their coverage defenses for peace of mind, Arch has not and in doing so has elected to wager a certain level of risk for the possibility of defeating coverage entirely. As in *Puget Sound Energy*, the instant contribution bar leaves open the possibility that the Stephanuses will absorb any resulting shortfall on the covenant judgment. 134 Wash.App. at 249, 253 (affirming covenant judgment entered with "proviso that plaintiff is not thereby protected from being the party that will bear the loss should the settlement be inadequate"). Even if Arch does not prevail on its defenses, it may still seek a determination relating to the percentage of its liability and attempt to force the Stephanuses to absorb the difference.[4] *See Cadet*, 2006 WL 910000 at *2. Arch may also seek contribution from the additional non-settling insurers identified by Arch that may have coverage obligations for the underlying claims. *See* Dkt. # 88, pp. 7-10 (listing insurers).

Finally, the Court disagrees with Arch that a motion for a contribution bar is not ripe for consideration. Arch fails to cite any authority for the proposition that settling insurers must

---

[3] Under current Washington law, the covenant judgment does not preclude additional recovery for extra-contractual damages caused to the insured by an insurer's bad faith. *See Miller v. Kenny*, 180 Wash.App. 772, 802, 325 P.3d 278 (2014). Arch's potential extra-contractual exposure is an additional factor supporting the fairness of a contribution bar. *See Cadet*, 2006 WL 910000, *3.

[4] The Court declines Arch's invitation to condition the bar order by limiting *a priori* Arch's exposure to the actual percentage of liability for the amount of total damages as determined at trial. *See* Dkt. # 88, pp. 25-26. As explained by the *Puget Sound Energy* court, such an approach is typically not workable in an insurance coverage case, where all insurers on risk during the period of damages are jointly and severally liable for the entire jury verdict, up to their policy limits, making it impossible to assign percentage culpability as in a securities action. *Puget Sound Energy*, 134 Wash. App. at 252.

ORDER GRANTING MOTION FOR CONTRIBUTION BAR
AND GRANTING MOTION TO COMPEL IN PART- 9

wait for a non-settling insurer to affirmatively plead contribution before seeking a bar order. *Cf. Colorado Casualty Ins. Co. v. Starline Windows, Inc.*, 2013 WL 6903778, *7 (W.D. Wash. 2013) (declining to grant request for contribution bar through a summary judgment motion where contribution was not pled and the court was presented with limited evidence about the settlement). Indeed, such a rule would undermine the purpose of a contribution bar and undercut the public policy favoring settlement by allowing a non-settling insurer to drag settling insurers through litigation by sitting on its contribution claim. An actual controversy exists over the liability of parties to this action for the covenant judgment, making the question of whether Arch should be barred from seeking contribution against settling insurers ripe for consideration. In the interest of encouraging settlement in this complex, multi-party litigation and having reviewed ample evidence about the settlement arrangements and found the amounts to be fair and the contribution bar to adequately protect the interests of non-settling insurers, the Court shall enter the bar order requested in this matter.[5]

### II.     Motion to Compel

Also pending before the Court is the Stephanuses' Motion to Compel, which seeks the disclosure of Arch's claims files, the striking of Arch's general objections in its discovery responses, and supplementation of two interrogatory responses. Arch opposes disclosure of its claims files solely because of the possibility that the instant Motion for a Contribution Bar would be denied, potentially prejudicing its insureds and exposing Arch to bad faith claims should the settlements be unwound. As the Court herein enters the requested contribution bar,

---

[5] The Court declines to entertain Arch's general objection to the joinders filed in support of the motion for a contribution bar (Dkt. # 91). Arch's arguments that the joinders are untimely and improper in seeking to put the settling insurers' respective coverage positions before the Court are unsupported and untenable. The Court further declines to consider Arch's objections to the second declaration of Todd Skoglund, as Arch failed to include this functional motion to strike in its responsive brief as required by Local Civil Rule 7(g).

ORDER GRANTING MOTION FOR CONTRIBUTION BAR
AND GRANTING MOTION TO COMPEL IN PART- 10

Arch's singular ground for opposing disclosure is moot, and the claims files shall be disclosed.

By contrast, the Court declines to grant the other relief requested by the Stephanuses. First, as Arch indicates that it no longer relies on its improper, general objections to discovery responses (*see* Dkt. # 124, ¶ 9), the request to strike this material is moot. As to supplementation of interrogatories responses, the Court agrees with Arch that granting the requested relief would be premature. The Stephanuses have failed to include a certification that they conferred with Arch about this, or any other disputed discovery issue, in accordance with Local Civil Rule 37(a)(1). It also appears from the declaration filed in support of Arch's opposition brief that Arch's responses to Interrogatories No.'s 2 and 5 were not the subject of any discussions between counsel. *See* Dkt. # 124, ¶ 16. Accordingly, the Court denies without prejudice the Stephanuses' request to compel these responses in consideration of the strong policy embedded in the Local Rules of encouraging the parties to, wherever possible, resolve discovery disputes without the Court's intervention.

As the instant Motion was filed without a meet-and-confer certification and as neither party substantially prevailed on the Motion, the Court finds that an award of attorney's fees would not be in the interest of justice. *See* Fed.R.Civ.P. 37(a)(5).

## CONCLUSION

For the reasons stated herein, the Court hereby finds and ORDERS as follows:

(1) Defendants' Motion for a Contribution Bar (Dkt. # 56) as well as Joinders therein (Dkt. ## 69, 80, 82, 86) are GRANTED.

(2) Defendants' Motion to Compel (Dkt. # 121) is GRANTED in part as to disclosure of Arch's claims files and DENIED without prejudice in all other respects as moot and

ORDER GRANTING MOTION FOR CONTRIBUTION BAR
AND GRANTING MOTION TO COMPEL IN PART- 11

for failure to abide by the Court's meet-and-confer requirements. No attorneys' fees shall be awarded.

(3) The Court finds the settlements with Canal Indemnity Company and the Excess Insurers to be reasonable via-a-vis a contribution bar order and that the following bar order adequately protects the interests of the non-settling insurance companies.

**CONTRIBUTION BAR ORDER**

Accordingly, it is hereby ORDERED that:

All claims that non-settling insurance carriers, including Arch Specialty Insurance Company, may have against Canal Indemnity Company or the Excess Insurers (Insurers National Surety Corporation and Interstate Fire and Casualty Company, General Star Insurance Company, Chubb Custom Insurance Company, and United National Insurance Company) for contribution, equitable contribution, subrogation, indemnity or any other claim or recovery arising from policies identified in Defendants' Contribution Bar Motion (Dkt. # 56) and issued by Canal or the settling Excess Insurers are BARRED with respect to claims and damages (including but not limited to indemnity damages, subrogation, settlement amounts, judgments and/or defense fees & costs) arising from the design, development, construction, sale and repairs of the projects at issue in the following lawsuits: *West Mall Place Apartments LLC et al v. Global Development LLC et al.*, Snohomish County Cause No. 10-2-07013-1; *Park Edmonds Apartments LLC et al. v. Global Development LLC et al.*, Snohomish County Cause No. 10-2-07014-0; *Park 210 Apartments LLC et al. v. Global Development LLC et al.*, Snohomish County Cause No. 12-2-09963-2; and *Park 212 Apartments LLC et al. v. Global Development LLC et al.*, Snohomish County Cause No. 12-2-

ORDER GRANTING MOTION FOR CONTRIBUTION BAR
AND GRANTING MOTION TO COMPEL IN PART- 12

09964-1; and/or any and all other apartments and properties that were delivered by the Mastros to the Stephanuses.

Dated this 23rd day of January 2015.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER GRANTING MOTION FOR CONTRIBUTION BAR
AND GRANTING MOTION TO COMPEL IN PART- 13